THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

LARRY MARTIN and
NORMA MARTIN,

**COMPLAINT AND JURY DEMAND**

Plaintiffs,

v.

Civil Action No. 13-cv-617

WYNDHAM VACATION RESORTS, INC.,

Defendant.

Plaintiffs, Larry Martin and Norma Martin, by their attorneys Mary Catherine Fons and Ivan J. Hannibal, make this Complaint against defendant, Wyndham Vacation Resorts, Inc.

## INTRODUCTION

Larry and Norma Martin, previous Wyndham timeshare owners, responded to an offer for a low-cost vacation at Wyndham's resort in the Wisconsin Dells which required them to attend a presentation by Wyndham. They accepted the offer and took the vacation in February of 2013. At the required presentation, Wyndham's salesperson, Raimund Immig, lied to the Martins and failed to inform them of critical aspects of timeshare points he was trying to sell them. The Martins, trusting that Wyndham was giving them truthful, complete, and accurate information, agreed to buy additional timeshare points. When the Martins learned that Wyndham did not provide truthful, complete and accurate information, they timely cancelled their timeshare purchase. Wyndham did not honor their cancellation. Wyndham has engaged in a campaign of debt collection harassment to try and get the Martins to pay money they do not owe. This is an action to hold Wyndham liable for its numerous violations of consumer protection laws.

## I.  Preliminary Statement

1. This is an action for damages brought by individual consumers for defendant's violations of: Wis. Stat. § 100.18(1), governing fraudulent representations; Wisconsin Chapter 707, governing timeshare sales in Wisconsin; the Wisconsin Consumer Act, Wis. Chapters 421-427;  Wis. Stat. §§ 943.41(2) and 895.446, governing property damage or loss caused by crime; and Wis. Stat.§ 995.50, governing invasion of privacy.

2. This is an action for pecuniary loss, actual damages, treble damages, punitive damages, statutory damages and relief, disgorgement of profits, declaratory relief, injunctive relief, and costs and attorney's fees.

## II. Jurisdiction and Venue

3. Jurisdiction is proper in this action under federal diversity jurisdiction.  Federal diversity jurisdiction of this Court arises under 28 U.S.C. § 1332.  Plaintiffs are citizens of Minnesota and defendant Wyndham Vacation Resorts, Inc., is a Delaware corporation with a primary place of business in Florida.  The amount in controversy exceeds $75,000.  This Court may grant declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.

**Aggregation**

4. Aggregation of plaintiffs' amounts in controversy is appropriate in this case under the holding of *Travelers Property Casualty et al. v. Good*, 689 F.3d 714, 721-22 (7th Cir. 2012). Aggregation of claims is appropriate "when several parties have a common, undivided interest and a single title or right is involved." *Gilman v. BHC Sec., Inc.*, 104 F.3d 1418, 1423 (2nd Cir. 1997) *citing* 14A Charles A Wright et al., Federal Practice and Procedure Section(s) 3704, at 83 (2d ed. 1985). "[C]laims of co-parties are 'common and undivided'… where each claim (1) is part of a 'common fund'; and (2) could not be adjudicated on an individual basis without affecting the interests of the other claimants." *Travelers*, 689 F.3d at 721.  A "common fund exists when 'plaintiffs share[] a

preexisting (pre-litigation) interest in the subject of the litigation.'" *Id*. at 722 citing *Gilman*, 104 F.3d at 1427.

5. In this case, plaintiffs jointly entered into a timeshare transaction with defendant. The plaintiffs hold title to the timeshare jointly. The interests of one plaintiff cannot be adjudicated without affecting the rights and interests of the other plaintiff.

**Amount in Controversy**

6. Under the terms of the February 2013 timeshare contract, the total sales price of the timeshare was $131,194.58. As part of this transaction, plaintiffs are alleged to be liable to Bill Me Later for a $12,000 loan arranged by defendant to fund a portion of the downpayment. Plaintiffs are also alleged to be liable to Barclays Bank Delaware for a credit card arranged by defendant and used to fund a portion of the downpayment on the timeshare transaction in the amount of $2,846.58.

7. Under the terms of the February 2013 timeshare contract, plaintiffs are also liable for maintenance fees in an amount of no less than $4,271.70 a year, in perpetuity.

8. To date, plaintiffs have paid at least $96,442.58 to defendant on the timeshare contract as a down payment. Of that amount $81,596 was equity trade-in, $12,000 was a loan procured and arranged by defendant through Bill Me Later, and $2,846.58 was charged to a credit card defendant procured and arranged for plaintiffs. Defendant is continuing to seek payment from plaintiffs on the remaining balance of the timeshare contract and the balance on related maintenance fees.

9. Under the holding of *Hughes v. Chrysler*, 197 Wis.2d 973, 976, 542 N.W.2d 148 (1996), pecuniary loss includes the purchase price. The pecuniary loss in this case exceeds $131.194.58 plus annual maintenance fee obligations of no less than $4,271.70 a year in perpetuity. Plaintiffs' claims under Wis. Stat. § 100.18 entitle them to recover their pecuniary loss, if successful. Plaintiffs' claims for property damage or loss caused by financial transaction card crimes entitle them to recover three times their actual damages, if successful.

10. Plaintiffs also seek punitive damages in an amount to be determined by a jury. Plaintiffs have a good faith belief that they will be successful in recovering punitive damages. First, defendant's conduct directed to plaintiffs was malicious and constituted an intentional disregard of plaintiffs' rights. Second, upon information and belief, the conduct engaged in with regard to plaintiffs is part of defendant's pattern and practice of selling timeshares. And third, plaintiffs anticipate that current and/or former employees of defendant will testify that the fraudulent conduct engaged in by defendant towards plaintiffs was a regular practice taught and condoned by defendant.

11. Venue in this District is proper in that the defendant transacts business here, and the conduct complained of occurred in the Wisconsin Dells, Sauk County, Wisconsin.

### III. Parties

12. Plaintiff Larry Martin is a resident of Hennepin County and citizen of the State of Minnesota. At all times relevant to the facts in this Complaint, Larry Martin resided in Hennepin County, Minnesota. Larry Martin is a retired pipefitter. Larry Martin is married to Norma Martin.

13. Plaintiff Norma Martin is a resident of Hennepin County and citizen of the State of Minnesota. At all times relevant to the facts in this Complaint, Norma Martin resided in Hennepin County, Minnesota. Norma Martin is a retired daycare provider and pre-school teacher.

14. Defendant Wyndham Vacation Resorts, Inc. ("Wyndham") is a Delaware corporation with a primary place of business in Florida and a Wisconsin place of business in Sauk County, Wisconsin.

### IV. Facts

15. In early 2013, the Martins were invited by Wyndham to a three-night, four day vacation at Wyndham's resort in the Wisconsin Dells, Sauk County, Wisconsin.

16. The vacation offered by Wyndham included several meals.

17. Wyndham represented that the Martins qualified for this offer because they were Gold Card Wyndham Members due to their previous timeshare purchases from Wyndham.

18. The Martins had to pay $99 and agree to attend a presentation in order to obtain the vacation offered by Wyndham.

19. The Martins accepted Wyndham's offer and made arrangements to take the vacation in early February 2013.

20. The Martins went to Wyndham's resort in the Wisconsin Dells on Friday, February 1, 2013 and stayed for three nights.

21. Over the course of the weekend, Della Roskey ("Roskey"), a Wyndham representative, accompanied the Martins to each meal provided by Wyndham. The Martins did not learn until February 1, 2013, when they signed in at the resort, that Roskey would be accompanying them to each meal provided by Wyndham. At the prearranged meals, the Martins observed that there were other couples who were also being accompanied by Wyndham representatives.

22. On Sunday, February 3, 2013, after having breakfast with Roskey and the other vacationing couples, Roskey took the Martins to meet with Wyndham sales representative, Raimund Immig ("Immig").

23. The Martins' goal at the presentation was to find out how to use the Wyndham timeshare points they already owned to pay the annual maintenance fees associated with their timeshare points.

24. The Martins were hoping to find out how they could prevent their children from having to pay any maintenance fees when the timeshare was passed on to them.

25. After introductions and some small talk, Immig made a sales pitch to try and get the Martins to make an additional purchase from Wyndham. Roskey was present for the entire sales pitch.

26. Immig told the Martins that the Martins could convert all of their Wyndham timeshare points to credits towards maintenance fees at the rate of $6.00 for every 1,000 timeshare points if they purchased more points. The Martins later found out this was not true.

27. In response, the Martins made clear to Immig that they did not want to buy any more timeshare points, and that they only wanted to know how to convert their current timeshare points to credits to cover all of their maintenance fees.

28. Immig told the Martins that if they bought 205,000 more points, their entire annual maintenance fee obligation could be paid by converting points to maintenance fees.

29. Based on these representations, the Martins agreed to make a purchase.

30. The Martins agreed to use their previously owned timeshare as a downpayment towards the new purchase.

31. As part of the sales transaction, Immig informed the Martins that Wyndham would arrange and procure a Wyndham Rewards credit card for the Martins, so that the Martins' monthly maintenance fee obligation could be charged to that credit card, and so that the Martins could receive Wyndham Rewards points for using the credit card.

32. No Wyndham representative told the Martins on February 3, 2013, about charging any amount to the credit card that day and the Martins never authorized any such charge.

33. No Wyndham representative told the Martins on February 3, 2013, about the necessity for a downpayment other than the equity traded in on their previously owned timeshare.

34. No Wyndham representative ever informed the Martins on February 3, 2013 that Wyndham had arranged and procured for the Martins a loan through the Bill Me Later program to fund

35. Upon information and belief, Wyndham trains its sales employees to arrange and procure loans through various credit cards and the Bill Me Later program without customers' knowledge or consent.

36. As part of the application process for the Wyndham Rewards credit card, Immig asked the Martins what their joint annual income was, even though the credit card Immig was allegedly procuring was solely for Larry Martin.

37. In response, the Martins told Immig that their annual income was about $48,000 and consisted of fixed pension and social security benefits.

38. Immig then told the Martins that the figure put in the credit card application should include the Martins' joint assets as well as their income on the total gross annual income line.

39. The Martins told Immig that they owned a house, truck and car.

40. Based on this information, Larry Martin signed a credit card application, filled out by a Wyndham employee, that identified his total gross annual income as $100,000.

41. Upon information and belief, Wyndham provided the credit application, which misidentified Larry Martin's total gross annual income, to Barclays Bank Delaware.

42. Upon information and belief, Wyndham trains its sales employees to falsify potential customers' income information on credit applications.

43. According to sworn testimony by Jason Klidies, a former Wyndham timeshare employee, Kyle Mays, a Wyndham manager in the Wisconsin Dells, instructed Klidies and others to leave the income line on customers' credit applications blank, and bring the credit applications to Mays who would falsify the customers' income. Deposition of Jason Klidies in *Bobzien v. Wyndham Vacation Resorts, Inc.*, U.S District Court, Western District of Wisconsin, Case No. 12cv357, pp. 66-67.

44. Upon information and belief, the inaccurate income figure was also provided to Bill Me Later, Wyndham's in-house credit department, as well as purchasers of and investors in Wyndham's loan portfolios. Wyndham profited from the use of the inaccurate income figure and, upon information and belief, this is a routine practice of Wyndham.

45. Upon information and belief, Wyndham, Bill Me Later, and Barclays Bank Delaware would not have granted credit to the Martins if Wyndham had not intentionally misstated Larry Martin's total gross annual income.

46. According to the documents presented by Wyndham to the Martins, and signed by the Martins, the total sales price of the timeshare was $131,194.58.

47. Of the total sales price, $96,442.58 was a down payment. According to the documents, the downpayment consisted of $81,596 of equity trade-in from a previous timeshare owned by the Martins, $12,000 from a loan arranged by Wyndham through Bill Me Later, and $2,846.58 charged to a credit card Wyndham procured and arranged for the Martins from Barclays Bank Delaware.

48. According to the timeshare contract, the Martins financed $20,502.42 through Wyndham to pay for the balance of the timeshare purchase price. The loan payment schedule for Wyndham's loan required the Martins to make 120 monthly payments of $289.60, beginning March 20, 2013.

49. According to the documents, the Martins are also liable for maintenance fees in an amount of no less than $4,271.70 a year, in perpetuity.

50. On February 4, 2013, the day after signing the sales documents, Larry Martin located Immig and told him that the Martins wanted to cancel the February 3, 2013 timeshare purchase.

51. Immig, however, talked Larry Martin out of cancelling that day.

52. On February 5, 2013, within the statutorily allowed cancellation period, the Martins signed and mailed a notice of cancellation to Wyndham via the U.S. mail, thereby cancelling the timeshare purchase.

53. Wyndham did not honor the Martins' notice of cancellation of their timeshare transaction.

54. Since the timeshare transaction, Wyndham has called the Martins on their home telephone relentlessly in an effort to collect money from them related to the February 3, 2013, timeshare purchase.

55. Wyndham has called the Martins multiple times a day for months.

56. Larry Martin informed several of Wyndham's debt collectors that the Martins were not going to be paying Wyndham and to stop calling.

57. The Martins have suffered emotional distress, anger, frustration, and anxiety as a result of Wyndham's debt collection harassment.

58. The Martins did not learn until June of 2013 that Wyndham had caused a charge to be made to the Barclays Bank Delaware credit card as part of the downpayment on the timeshare transaction.

59. The Martins did not learn until June of 2013 that Wyndham had arranged and procured a loan from Bill Me Later to fund part of the downpayment on the timeshare transaction.

60. Upon information and belief, Wyndham has not taken any steps to inform Barclays Bank Delaware or Bill Me Later that the Martins timely cancelled the February 3, 2013, timeshare transaction.

61. The Martins bought the timeshare for personal, family or household purposes and not for any business or commercial purposes.

62. The Martins have suffered a pecuniary loss and actual damages as a result of the actions of Wyndham.

63. Wyndham acted maliciously toward the Martins, and intentionally disregarded the rights of the Martins.

64. Upon information and belief, Wyndham and Immig engaged in the same predatory and illegal conduct with regard to other individuals.

## FIRST CLAIM
## VIOLATIONS OF THE WISCONSIN TIMESHARE ACT

65. The Martins incorporate by reference the allegations of all preceding paragraphs.

66. Wyndham was required to comply with Wis. Stat. Chapter 707, "Time-Share Ownership."

67. Wyndham failed to include documents mandated by Wis. Stat. § 707.41 in the February 2013 timeshare disclosure statement.

68. Wyndham, through Immig, made false, deceptive and misleading statements, and contradictory statements in connection with the offer and sale of the timeshare.

69. Upon information and belief, Wyndham engaged in numerous violations of the Wisconsin Timeshare Act, Chapter 707 of the Wisconsin Statutes, with respect to the Martins, including without limitation: Wis. Stat. §§ 707.06, 707.07, 707.41, 707.46, 707.47, and 707.55.

70. Upon information and belief, Wyndham has violated other provisions of the Wisconsin Timeshare Act with respect to the Martins.

71. The Martins are entitled to all remedies set forth in Wis. Stat. § 707.57(1), including but not limited to declaratory relief for disgorgement of profits, and relief provided by other parts of the Wisconsin Timeshare Act.

## SECOND CLAIM
## VIOLATIONS OF WIS. STAT. § 100.18

72. The Martins incorporate by reference the allegations of all preceding paragraphs.

73. Wyndham, through Immig, made untrue, deceptive, and misleading representations and statements in violation of Wis. Stat. § 100.18, in an effort to sell the timeshare to the Martins.

74. The Martins suffered pecuniary loss because of the violations of Wis. Stat. § 100.18 by Wyndham.

75. The Martins are entitled to recover their pecuniary loss, together with costs and reasonable attorneys' fees, from Wyndham.

## THIRD CLAIM
## PROPERTY LOSS FROM FINANCIAL TRANSACTION CARD CRIMES

76. The Martins incorporate by reference the allegations of all preceding paragraphs.

77. The Bill Me Later plan and the Barclays Bank Delaware credit card are "financial transactions cards," as defined by Wis. Stat. §§ 943.41(1)(em).

78. Wyndham, through Immig, intentionally made and caused to be made, directly and indirectly, a false statement in writing, knowing it to be false and with intent that it be relied upon, respecting the Martins' financial condition, for the purpose of procuring the issuance of financial transaction cards.

79. Wyndham took the actions in violation of Wis. Stat. §§ 895.446 and 943.41(2).

80. The Martins suffered a loss and actual damages, and, pursuant to Wis. Stat. § 895.446, are entitled to recover their actual damages, all costs of investigation and litigation that were reasonably incurred, including the value of the time spent by their attorneys, and exemplary damages of not more than three times their actual damages, from Wyndham.

## FOURTH CLAIM
## WISCONSIN CONSUMER ACT VIOLATIONS

81. The Martins incorporate by reference the allegations of all preceding paragraphs.

82. The timeshare contract, the Bill Me Later loan, and the Barclay's Bank Delaware loan are all "consumer credit transactions," as that term is defined by Wis. Stat. § 421.301(10).

83. The Bill Me Later loan and Barclay's Bank Delaware loan are "open-end credit plans," as that term is defined by Wis. Stat. § 421.301(27).

84. Wyndham is a "merchant" as that term is defined by Wis. Stat. § 421.301(25).

85. The Martins are "customers" as that term is defined by Wis. Stat. § 421.301(17).

### Violation of Wis. Stat. § 422.411

86. Wyndham violated Wis. Stat. § 422.411 by including a provision requiring the Marints pay for its attorneys fees in the timeshare contract.

87. As a result of the violation of Wis. Stat. § 422.411, the Martins are each entitled to the remedies and penalties provided in § 425.304 and actual damages, including emotional distress and mental anguish.

88. The provision in the timeshare contract regarding attorney fees is unenforceable pursuant to Wis. Stat. § 425.306.

89. The Martins are also each entitled to recover costs and reasonable attorneys' fees from Wyndham pursuant to Wis. Stat. § 425.308.

### Violation of Wis. Stat. § 425.103

90. Wyndham violated Wis. Stat. § 425.103(2)(b) by including default provisions not allowed by the Wisconsin Consumer Act in the timeshare contract.

91. The default provisions are invalid and the Martins are each entitled to the remedies and penalties set forth in Wis. Stat. §§ 425.302 and 425.306, and costs and reasonable attorney fees pursuant to Wis. Stat. § 425.308.

### Violation of Wis. Stat. § 423.301

92. Wyndham violated Wis. Stat. § 423.301 by making multiple misrepresentations and omitting material information regarding the extension of credit to induce the Martins to enter into the timeshare contract.

93. As a result of the violations of Wis. Stat. § 423.301, the timeshare contract is void and the Martins are each entitled to the remedies and penalties set forth in Wis. Stat. §§ 425.305 and 425.306, and costs and reasonable attorney fees pursuant to Wis. Stat. § 425.308.

**Violation of Wis. Stat. § 425.107**

94. Wyndham violated Wis. Stat. § 425.107 by engaging in conduct directed against the Martins that was unconscionable and by inducing the Martins into a transaction the result of which was unconscionable.

95. As a result of the violations of Wis. Stat. § 425.107, the Martins are entitled to an order denying enforcement of the timeshare contract, as well as the remedies and penalties set forth in Wis. Stat. §§ 425.107(1) and (5) and 425.303, 425.306, and costs and reasonable attorney fees pursuant to Wis. Stat. § 425.308.

**Violation of Wis. Stat. § 423.203**

96. The Bill Me Later loan and Barclay's Bank Delaware credit card are "consumer approval transactions," as that term is defined in Wis. Stat. § 423.201(1).

97. Pursuant to Wis. Stat. § 423.202, the Martins had a right to cancel the Bill Me Later loan and Barclay's Bank Delaware loan.

98. Pursuant to Wis. Stat. § 423.203(1), Wyndham was required to provide the Martins a written notice informing them of their right to cancel the Bill Me Later loan and Barclay's Bank Delaware loan.

99. Wyndham did not provide the Martins with a written notice which complies with Wis. Stat. § 423.203(1).

100. As a result of the violations of Wis. Stat. § 423.203, the Martins are entitled to the remedies and penalties set forth in Wis. Stat. §§ 423.203(4), 425.304, and 425.306, a declaration that the Bill Me Later loan and Barclay's Bank Delaware loan are cancelled and that the Martins do not owe any money to Bill Me Later or Barclay's Bank Delaware, and costs and reasonable attorney fees pursuant to Wis. Stat. § 425.308.

# FIFTH CLAIM
## WISCONSIN CONSUMER ACT VIOLATIONS – DEBT COLLECTION

101. The Martins incorporate by reference the allegations of all preceding paragraphs.

102. Wyndham is a "debt collector" as that term is defined by Wis. Stat. § 427.103(3).

103. Wyndham was engaged in "debt collection" as that term is defined by Wis. Stat. § 427.103(2).

104. The Martin's alleged obligations arising from the timeshare transaction are "claims" as that term is defined by Wis. Stat. § 427.103(1).

105. Wis. Stat. § 427.104(1) provides, in pertinent part, that:

> In attempting to collect an alleged debt arising from a consumer credit transaction or other consumer transaction, including a transaction primarily for an agricultural purpose, where there is an agreement to defer payment, a debt collector may not:
>
> . . .
>
> (g) Communicate with the customer or a person related to the customer with such frequency or at such unusual hours or in such a manner as can reasonably be expected to threaten or harass the customer;
>
> (h) Engage in other conduct which can reasonably be expected to threaten or harass the customer or a person related to the customer;
>
> . . .
>
> (j) Claim, or attempt or threaten to enforce a right with knowledge or reason to know that the right does not exist...

106. Wyndham violated Wis. Stat. § 427.104(1)(g) when it made numerous repetitive harassing calls to the Martins, and continued to call even though the Martins had asked it to stop calling and even though the Martins had timely cancelled the timeshare transaction.

107. Wyndham violated Wis. Stat. § 427.104(1)(h) when it made numerous harassing calls to the Martins, and continued to call even though the Martins had asked it to stop calling and even though the Martins had timely cancelled the timeshare transaction.

108. Wyndham violated Wis. Stat. § 427.104(1)(j) when it sent the Martins monthly billing statements related to the timeshare transaction, and when it made numerous harassing calls to the Martins, and continued to call even though the Martins had asked it to stop calling, and even though the Martins had timely cancelled the timeshare transaction. Wyndham also violated Wis. Stat. § 427.104(1)(j) when it continued to seek payments on the timeshare transaction from the Martins.

109. The Martins are entitled to recover their actual damages, statutory damages, costs and attorney fees pursuant to Wis. Stat. §§ 427.105, 425.304, and 425.308 from Wyndham.

## SIXTH CLAIM
## INVASION OF PRIVACY

110. The Martins incorporate by reference the allegations of all preceding paragraphs.

111. The Martins have a right of privacy in Wisconsin as recognized in Wis. Stat. § 995.50.

112. Wyndham's conduct unreasonably invaded the Martins' right to privacy and caused them damages including emotional distress.

113. The Martins are entitled to equitable relief to prevent and restrain further invasion, compensatory damages, and a reasonable amount of attorney fees pursuant to Wis. Stat. § 995.50.

## PUNITIVE DAMAGES

114. Plaintiffs are entitled to punitive damages from Wyndham in an amount to be determined at trial.

## JURY DEMAND

Plaintiffs demand a trial by jury.

**WHEREFOR**E, plaintiffs pray that judgment be entered in their favor against defendant on the claims set forth in this Complaint, and for their pecuniary loss, actual damages, treble damages, statutory damages and relief, punitive damages, injunctive relief, declaratory relief, disgorgement of profits, and costs and attorney's fees; that a declaration be entered that defendant violated the above statutes and laws; that the timeshare contract is cancelled, void and rescinded; that injunctive and declaratory relief be granted barring the collection of any monies purportedly owed under the timeshare contract, Bill Me Later loan, and Barclay's Bank Delaware loan, and requiring defendant to correct any adverse credit reports they have made regarding plaintiffs; that plaintiffs be awarded costs and reasonable attorney fees; and for such other and further relief as the Court deems just and proper.

Dated this 5th day of September, 2013.

    _s/ Mary Catherine Fons_
**Mary Catherine Fons, SBN 1017000**
Attorney for Plaintiffs
FONS LAW OFFICE
500 South Page Street
Stoughton, WI 53589-2448
Phone: 608-873-1270
*Fax:* 608-873-0496
mfons@chorus.net

**Ivan J. Hannibal, SBN 1050360**
Attorney for Plaintiffs
CONSUMER RIGHTS LAW OFFICE
5908 Running Deer Trail
Mc Farland, WI 53558-9053
Phone: 608-852-6702
consumerrightslawoffice@gmail.com